IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

UNITED STATES OF AMERICA,

**Criminal Number**

v.                                                  **05-CR-529 (DNH)**

JONATHAN BAKER,
    aka    "JB"
GEORGE FULLER,
    aka    "Shawn Bowen", and
KELVIN MINOTT,
    aka    "Slim",

                **Defendants.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


## UNITED STATES' TRIAL MEMORANDUM


Dated: October 4, 2006        Respectfully submitted,


                        GLENN T. SUDDABY
                        UNITED STATES ATTORNEY


                        /s/


By:    Lisa Marie Fletcher
        Assistant U.S. Attorney
        Bar Roll No.  510187

TABLE OF CONTENTS

PAGE

I.  Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. Statement of the Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.  Conspiracy to Distribute and Possess with Intent to
       Distribute Cocaine Base (Crack) and Cocaine (Count 1)
       (21 U.S.C. § 841(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.  Possession with Intent to Distribute Cocaine Base (Crack) and  Cocaine
       (Counts 4, 5 and 6) (21 U.S.C. § 841(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV.  Evidentiary Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A.  Statements of Co-Conspirators. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    B.  Witness Cooperation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    C.  Expert Testimony. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    D.  Audio Recordings and Transcripts.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    E.  Chain of Custody. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    F.  Evidence of Defendant's Prior Criminal Acts:  Rule 404(b) . . . . . . . . . . . . . . . . . .16

    G.  Rule 609 Impeachment Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

VI.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

I. **Statement of the Case**

 A. Jury selection is scheduled to commence at the discretion of United States District Judge Hon. David N. Hurd on or about October 10, 2006 in Utica, New York.

 B. Defendants JONATHAN BAKER, GEORGE FULLER, and KELVIN MINOT are each detained without bail.

 C. Jury trial has not been waived.

 D. The estimated duration of trial is approximately two weeks.

 E. The first count of the Fifth Superseding Indictment charges the defendants with conspiracy to distribute and possess with intent to distribute 50 or more grams of cocaine base (crack). Additional counts of the Fifth Superseding Indictment charge substantive offenses of possession with intent to distribute cocaine base (crack), some counts allege an amount over 5 grams of a mixture or substance containing a detectable amount of cocaine base (crack). As they relate to the trial defendants, those counts are as follows:

| Count | Date | Defendant | Charge |
|---|---|---|---|
| 17 | 06/23/05 | JONATHAN BAKER | 21 U.S.C.§841(a)(1) |
| 18 | 06/29/05 | JONATHAN BAKER | 21 U.S.C.§841(a)(1) |
| 19 | 06/30/05 | JONATHAN BAKER | 21 U.S.C.§841(a)(1) |
| 20 | 07/01/05 | JONATHAN BAKER | 21 U.S.C.§841(a)(1) |
| 21 | 07/01/05 | JONATHAN BAKER | 21 U.S.C.§841(a)(1) |
| 22 | 07/01/05 | JONATHAN BAKER | 21 U.S.C.§841(a)(1) |
| 23 | 07/01/05 | JONATHAN BAKER | 21 U.S.C.§841(a)(1) |
| 24 | 07/09/05 | JONATHAN BAKER | 21 U.S.C.§841(a)(1) |

| 37 | 06/22/05 | GEORGE FULLER | 21 U.S.C.§841(a)(1) |
| 38 | 07/01/05 | GEORGE FULLER | 21 U.S.C.§841(a)(1) |
| 41 | 08/02/05 | KELVIN MINOTT | 21 U.S.C.§841(a)(1) |

The Indictment also alleges that defendants, including JONATHAN BAKER and KELVIN MINOT have prior felony drug convictions, thereby affecting the penalty provisions of Title 21, United States Code, Section 841(b).

In addition, all indicted defendants are charged with forfeitures under Title 21, United States Code, Section 853.

F.   Expert witnesses

Forensic Chemists Brian O'Rourke of the DEA Northeast Laboratory, New York, New York. FBI Patois Translator Gloria Clarke

G.   Other potential witnesses:

FBI SA Anthony Fitzgerald
Inv. Gerald Azzarito, Utica Police Department/Oneida County Drug Task Force
Inv. Brad Pietryka, New Hartford Police Department/Oneida County Drug Task Force
Inv. Frederick Robenski, Rome Police Department/Oneida County Drug Task Force
Inv. Michael Tartaglia, Utica Police Department/Oneida County Drug Task Force
Inv. Michael  Yoxall, Rome Police Department
Inv. Thomas Yoxall, Rome Police Department/Oneida County Drug Task Force
Officer Jeffrey Race, Rome Police Department

Juan Breton
Dwayne Bowen
Mark Ramsey
Sandra Willis
Jeffrey Winters

During the course of preparing for trial, the government may come across other potential witnesses.  Our final witness list will be submitted prior to commencement of the trial.

## II. STATEMENT OF FACTS

In or about 2003, investigators began receiving information about a drug trafficking organization in the Utica, New York area, led by a Jamaican male whose street name was Jamaican Mike. The ensuing investigation involved numerous informants, cooperating witnesses, undercover drug buys (totaling over 100 grams of crack purchased from the organization) and wire intercepts with various members of the organization.

Information received from four confidential sources between 2003 and July 2005, indicates that starting in the early 1990s Jamaican Mike started a drug organization in Utica, New York that distributed multi-kilogram quantities of crack cocaine on a monthly basis. Jamaican Mike's drug trafficking organization quickly controlled a large share of the crack cocaine business in Utica and did so up to the time of the arrests in the instant case (August, 2005). Over the years, Jamaican Mike brought many other Jamaicans, most of whom were his relatives, to Utica to assist him in his drug operation. Some of those co-conspirators have been identified as Paul Fox, aka Israel Chambers, Sandra Willis, aka Eugine Mercurius, aka Charmaine, Tonya Brown, aka Carmen, David Stewart, aka Shortman, aka Gremo, Steven Smith, aka Bujo and Junior Mercurius, aka Dizzy.

In or about 2003 Jamaican Mike, identified to be Donovan Smith, was incarcerated on a federal immigration violation at the Federal Correctional Institute (FCI) - Allenwood, White Deer, Pennsylvania. From the time of Jamaican Mike's incarceration, the previously mentioned co-conspirators took over the drug operation in Utica.

From March 17, 2003 to May 17, 2005, 24 controlled purchases of crack cocaine were made either by confidential sources or undercover investigators. These purchases were made from Charmaine, Carmen, Shortman, Bujo and Dizzy. Additionally, controlled buys were also made from two of Carmen and Charmaine's workers, Calvin Anthony Buchanon, aka Fresh and Dwayne Bowen, aka D. These controlled buys were set up by calling cell phone numbers that these individuals used to take drug orders. It is noted that controlled buys with up to five of these individuals were made by calling the same cell phone number.

3

Based upon information developed from the controlled purchases and pen register coverage on the "order up" cell phone numbers, on June 13, 2005 a federal wiretap was initiated on two of the drug organization's cell phones.  Pertinent calls intercepted over 315-269-2791, (subject telephone #1) showed that the cell phone was used by Dizzy and Bujo to primarily take drug orders from middle to upper- level drug dealers in Utica, Oneida and Canastota.  Pertinent calls intercepted over 315-368-3638, (subject telephone #2) showed that it was used by Carmen, Shortman and their worker, Ian Phillips, to take drug orders from middle to upper-level drug dealers in Utica. Additionally, calls showed that another worker, not currently charged, was sent to Utica by Paul Fox to pick up drug proceeds from Ian Phillips.

On July 15, 2005, wire coverage on subject telephones #1 and #2 was renewed.  Wire coverage on two additional cell phones was also initiated that same day.  Pertinent calls intercepted over 315-601-3842, (subject telephone #3) showed that it was a drug "order up" cell phone that replaced subject telephone #2.  Co-conspirator Mark Ramsey, who worked for Carmen and Shortman, handled subject telephone #3 to take drug orders from middle to upper- level drug dealers in Utica.  Wire intercepts also showed that co-conspirators, including defendant KELVIN MINOTT, aka Slim, assisted Ramsey in supplying drug customers.  Pertinent calls intercepted on subject telephone #4 (646-271-9948), showed that it was used by Paul Fox to set up drug deliveries and money pick ups with Dizzy and Carmen.

Wire intercepts and physical surveillance confirmed that, among others, defendants JONATHAN BAKER and GEORGE FULLER, were mid-and upper-level crack dealers who obtained their crack supplies, or a portion of their supplies, directly from other members of the conspiracy, including Dizzy, Bujo and/or Mark Ramsey.

On July 17, 2005, Dizzy was murdered at the main drug stash house, 1108 Taylor Avenue, Utica, by an unknown assailant.  On July 18, 2005, wire coverage on SUBJECT TELEPHONE #1 was discontinued as that phone was located at the homicide scene and recovered by local homicide investigators.  Further, following the homicide, a search warrant was executed at 1108 Taylor

4

Avenue, as a result of which over 1 kilogram of crack was recovered.

As a result of the evidence gathered in the investigation, on August 9, 2005, numerous co-conspirators, including defendants GEORGE FULLER, and KELVIN MINOTT, were arrested, and appeared in U.S. District Court for their initial appearances.  Defendant JONATHAN BAKER, who was incarcerated at the time for a parole violation, was produced in U.S. District Court on August 11, 2005 for his initial appearance.

The evidence in the case will include physical evidence including crack cocaine recovered from 1108 Taylor Street following the murder of Dizzy at that location, audio tapes and transcripts of the defendants' intercepted wiretap conversations, video surveillance, and the testimony of law enforcement officers, cooperating co-conspirators, the FBI Patois interpreter who transcribed the intercepted communications, the DEA chemist, and others noted above.


### III.  STATEMENT OF THE LAW

#### A.    Conspiracy to Distribute and Possess With Intent to Distribute Cocaine Base (Crack) and Cocaine(Count 1) 21 U.S.C. § 846

Count 1 charges the defendants with conspiracy to distribute and possess with intent to distribute cocaine base (crack).  In order to sustain its burden of proof at trial, the United States must show that there was an agreement or understanding between two or more persons to possess cocaine base (crack) with intent to distribute it and that the defendants knowingly became members of the conspiracy.  "It is the unlawful agreement itself which constitutes the crime." *United States v. Martino*, 759 F.2d 998, 1004 (2d Cir. 1985). See *Iannelli v. United States*, 420 U.S. 770, 777 n. 10, 95 S. Ct. 1284, 43 L.Ed.2d 616 (1975).  The United States is not required to prove the commission of any overt act in furtherance of a narcotics conspiracy.  *United States v. Knuckles*, 581 F.2d 305, 311  (2d Cir.1978); *United States v. Bermudez*, 526 F.2d 89, 94 (2d Cir. 1975).

The elements of a conspiracy, and a defendant's membership in it, may be proved entirely by

circumstantial evidence. *Glasser v. United States*, 315 U.S. 60, 80, 62 S. Ct. 457, 86 L. Ed 680 (1942); *United States v. Tutino*, 883 F.2d 1125, 1129 (2d Cir. 1989); *United States v. Martino*, 759 F.2d at 1002; *United States v. Torres*, 740 F.2d 122, 125 (2d Cir. 1984). A conspiracy is "by its very nature a secretive operation". *United States v. Provenzano*, 615 F.2d 37, 45 (2d Cir. 1980). Thus, the informal agreement present in most conspiracies must frequently be proven entirely by circumstantial evidence. See *United States v. Martino*, 759 F.2d at 1002-1004. To be sufficient, such evidence "need not have excluded every possible hypothesis of innocence". *United States v. Soto*, 716 F.2d 989, 993 (2d Cir. 1983). See *United States v. Ragland*, 375 F.2d 471, 477 (2d Cir. 1967).

A conspirator need not join a conspiracy at its inception to be guilty of conspiracy; each person joining a conspiracy is taken to adopt, and is bound by, the prior acts and statements made in furtherance of the common objective. *United States v. Sarno*, 456 F.2d 875, 878 (1st Cir. 1972); *United States v. Sansone*, 231 F.2d 887, 893 (2d Cir. 1956).

Seemingly innocent acts, viewed in light of all the surrounding circumstances, may justify an inference of participation in a conspiracy. *United States v. Mariani*, 725 F.2d 862, 865-866 (2d Cir. 1984); *United States v. Calabro*, 449 F.2d 885, 890 (2d Cir. 1971).

Each conspirator need not know the identity or number of all his co-conspirators. *Blumenthal v. United States*, 332 U.S. 539, 557, 68 S. Ct. 248, 92 L. Ed. 154 (1947); *United States v. Gleason*, 616 F.2d 2, 16 (2d Cir. 1979). Nor must the United States prove the identity or number of coconspirators. *Rogers v. United States*, 340 U.S. 367, 375, 71 S. Ct. 438, 95 L. Ed. 1348 (1951). See *United States v. Moree*, 897 F.2d 1329, 1332 (5th Cir. 1990); *United States v. Artuso*, 618 F.2d 192, 197 (2d Cir. 1980). "[A]t least two persons are required to constitute a conspiracy but the identity of the other members is not needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown." *Rogers v. United States*, 340 U.S. at 375.

When proof of conspiracy is shown, only slight additional evidence is necessary to connect a particular defendant with it. *United States v. Marrapese*, 486 F.2d 918 (2d Cir. 1973). "Once a

6

conspiracy is shown to exist, the evidence sufficient to link another defendant to it need not be overwhelming." *United States v. Tutino*, 883 F.2d at 1129; *United States v. Ciambrone*, 787 F.2d 799, 806 (2d Cir. 1986); *United States v. Provenzano*, 615 F.2d 37, 45 (2d Cir. 1980).

Even a single act may suffice to establish membership in a conspiracy if it justifies an inference of the requisite knowledge. *United States v. Torres*, 503 F.2d 1120, 1123 (2d Cir. 1974). A defendant once found to be a member of a conspiracy, whatever his level of participation, may be criminally responsible for acts of which he is unaware by persons whose existence is unknown to him, if done as part of the conspiratorial design. *United States v. Cirillo*, 468 F.2d 1233, 1239 (2d Cir. 1972).

Evidence of the entire scope of the conspiracy is admissible against each co-conspirator regardless of how minor the co-conspirator's role may have been. *United States v. Nersesian*, 824 F.2d 1294, 1304 (2d Cir. 1987).

Although someone who merely purchases cocaine for his personal use is not a co-conspirator in his supplier's distribution conspiracy, one who purchases with the intent to engage in further distribution is a co-conspirator. *United States v. Young*, 822 F.2d 1234, 1241 (2d Cir. 1987). See *United States v. Medina*, 944 F.2d 60, 65 (2d Cir.1991) (upholding the trial court's refusal to instruct the jury that a buyer-seller relationship is insufficient to establish a conspiracy because the evidence showed advanced planning among the alleged co-conspirators who were dealing in wholesale quantities of drugs).

In *United States v. Young*, for example, the Second Circuit found that a defendant who purchased cocaine to supply to guests he was expecting and relayed a customer's complaint about the quality of the cocaine participated in a conspiracy with his supplier. Similarly, the Court found that another defendant who purchased cocaine to give to his co-workers and discussed the price and availability of cocaine in coded terms with his supplier was actively involved in the supplier's conspiracy.

7

### B.   Possession With Intent to Distribute Cocaine Base (Crack) and Cocaine (Counts 17 through 24, 37, 38, and 41) - 21 U.S.C. § 841(a)(1)

Counts 17 through 24, 37, 38, and 41 charge the individual defendants, as noted above, with various counts of possession with intent to distribute cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1).  The elements of this crime are as follows:  (1) the defendant possessed the controlled substance (in this case, cocaine base [crack]); (2) the defendant knew that this substance was cocaine base (crack); and (3) the defendant possessed the cocaine base (crack) with the intent to distribute it.

"Distribute" means "to deliver (other than by administering or dispensing) a controlled substance".  21 U.S.C. § 802(11). "Delivery" is "the actual, constructive, or attempted transfer of a controlled substance".  21 U.S.C. § 802(8).

"[I]ntent to distribute may be proven by either direct or circumstantial evidence and may be inferred from such things as the possession of a large quantity of a controlled substance, its high purity levels, the presence of paraphernalia used to aid in the distribution of drugs, large sums of unexplained cash, and the presence of firearms."  *United States v. Shurn*, 849 F.2d 1090, 1093 (8th Cir. 1988). See *United States v. Castellanos*, 731 F.2d 979, 984-85 (D.C. Cir. 1984).

"[T]he possession of narcotics may be actual or constructive."  *United States v. Torres*, 901 F.2d 205, 221 (2nd Cir. 1990); *United States v. Aiello*, 864 F.2d 257, 263 (2d Cir. 1988).

> Constructive possession exists when a person . . . knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.

*United States v. Pelusio*, 725 F.2d 161, 167 (2d Cir. 1983), quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973). See also *United States v. Hastings*, 918 F.2d 369, 371-72 (2d Cir. 1990).  Simply put, "[c]onstructive possession is defined as knowledge of presence plus control." *United States v. Shurn*, 849 F.2d at 1093. A person has constructive possession over narcotics if he has dominion over the place where they are hidden. *Id.*

8

## IV.  EVIDENTIARY ISSUES

### A.     Statements of Co-Conspirators

Federal Rule of Evidence 801(d)(2)(E) provides that, "a statement is not hearsay if . . . [it] is offered against a party and is . . . a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy".

For a co-conspirator's statement to be admissible against a defendant, the Government must show (1) that a conspiracy existed, (2) that both the defendant and the declarant participated in it, (3) that it was in existence when the statement was made, and (4) that the statement was made in furtherance of the conspiracy.  *United States v. Lyles*, 593 F.2d 182, 194 (2d Cir. 1979); *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969).  However, the existence of the conspiracy need only be proven by preponderance of the evidence, *Bourjaily v. United States*, 483 U.S. 171, 176, 107 S. Ct. 2775, 97 L.Ed.2d 144 (1987); *United States v. DeFillipo*, 590 F.2d 1228, 1236 (2d Cir. 1979).  The statements being offered may themselves be considered in determining whether a conspiracy existed, *Bourjaily*, 483 U.S. at 180, and when the existence of a conspiracy has been shown, evidence sufficient to link another defendant to it need not be overwhelming.  *United States v. Provenzano*, 615 F.2d 37, 45 (2d Cir. 1980); quoting *United States v. Head*, 546 F.2d 6, 9-10 (2d Cir. 1976).

Statements of co-conspirators are admissible against a defendant even where the co-conspirators are <u>not</u> also defendants at the trial.  *United States v. Celaya-Garcia*, 583 F.2d 210 (5th Cir. 1978); *United States v. John*, 508 F.2d 1134 (8th Cir. 1975).

"As a concession to the practicalities of proof, since an entire case cannot be put in simultaneously but must proceed in sequence, the trial court in its discretion may admit a particular piece of evidence "subject to connection".  *United States v. Ziegler*, 583 F.2d 77, 80 (2d Cir. 1978). See also, *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969).  This is the preferable course in the interest of judicial economy.  See *United States v. Vinson*, 606 F.2d 149 (6th Cir. 1979). Then,

9

when all the evidence is in, the trial judge must determine "whether in his view the prosecution has proved participation in the conspiracy, by the defendant against whom the hearsay is offered, by a fair preponderance of the evidence". *Geaney*, *supra*, 417 F.2d at 1120. The determination of this issue by the Court should be outside the presence of the jury, and the Court should <u>not</u> advise the jury of the Court's findings that the Government has satisfactorily proved the conspiracy. See *Vinson, supra*, 606 F.2d at 153. However, the Court should inform the jury that such evidence is admissible "to consider along with all the other evidence in determining whether they are convinced of a defendant's guilt beyond a reasonable doubt". *United States v. Mastropieri*, 685 F.2d 776, 788 (2d Cir. 1982).

In determining whether a statement by a co-conspirator during the course of the conspiracy was made "in furtherance of" the conspiracy, courts have examined the context in which such statements are made. *United States v. Hamilton*, 689 F.2d 1262 (6th Cir. 1982). Declarations are intended to advance the objects of the conspiracy when, for example, they (1) "prompted the listener to respond in a way that facilitates the carrying on of criminal activity," *United States v. Rahme*, 813 F.2d 31, 35 (2d Cir. 1987), (2) inform the listener of the current status of the conspiracy, (3) apprize the listener of the progress of the conspiracy or solicit his assistance, (4) inform the listener of the identities and activities of co-conspirators, *United States v. Persico*, 832 F.2d 705, 716 (2d Cir. 1987), (5) provide reassurance, serve to maintain trust and cohesiveness, *United States v. Rastelli*, 870 F.2d 822, 837 (2d Cir. 1989), or (6) form part of a scheme to "cover-up" the group's underlying illegal activity. See *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1199 (2d Cir. 1989).

### B.   <u>Witness Cooperation</u>

The Second Circuit has repeatedly allowed the Government to develop the circumstances surrounding a witness' cooperation, or other matter damaging to his credibility, during direct examination. *United States v. Cosentino*, 844 F.2d 30, 33 (2d Cir. 1988); *United States v. Singh*, 628 F.2d 758, 761 (2d Cir. 1980); *United States v. Arroyo-Angulo*, 580 F.2d 1137, 1146 (2d Cir. 1978). This exception to the rule prohibiting a party from impeaching his own witness, serves to avoid the

10

inference that the Government is attempting to conceal evidence of witness' bias from the jury.  The rule is perhaps best explained by Judge Oakes in *United States v. Borello*, 766 F.2d 46, 57 (2d Cir. 1985) and Judge Mulligan in *United States v. Edwards*, 631 F.2d 1049, 1052 (2d Cir. 1980):

> The rule of *Arroyo-Angulo* and the doctrine enunciated in Singh indicate that the Government may not introduce the entire cooperation agreement on direct examination of its witness since the witness' credibility has not been attacked and the entire cooperation agreement bolsters more than it impeaches.  . . .  However, the elicitation of the fact of the agreement and the witness' understanding of it, as a motivation for the witness to testify for the Government, should be permitted on direct examination in order to anticipate cross-examination by the defendant which might give the jury the unjustified impression that the Government was concealing this relevant fact.

What is important, as *Edwards* recognized, is that although the prosecutor should not offer a written cooperation agreement into evidence during direct examination, it is permissible for the prosecutor to both inquire as to the fact that a cooperation agreement has been signed, and permit the witness to identify this agreement and to explain his understanding of its terms.  *Edwards*, at 1052.  This procedure, as *Edwards* says, avoids having "the jury . . . learn at that time that the agreement was revocable if the witness perjured himself, that upon such perjury the witness might be subject to prosecution for any and all crimes, and anything the witness had previously said could be held against him."  *Id.*  Thus, the allowed or admissible witness' direct testimony merely concerns his or her motive for cooperating with the Government.

### C.  Expert Testimony

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony, providing:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and

11

methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

A trial judge has broad discretion to admit or excuse expert testimony under this Rule. *United States v. Aminy,* 15 F.3d 258, 261 (2d Cir. 1994); *United States v. Tutino*, 883 F.2d 1125, 1134 (2d Cir. 1989); *United States v. Diaz*, 878 F.2d 608, 616 (2d Cir. 1989).

A judge's determination to admit such evidence will be overturned only if "manifestly erroneous" or an "abuse of discretion". *General Electric Co. v. Joiner*, 522 U. S. 136, 142 (1997); *United States v. Tutino*, 883 F.2d 1125, 1134 (2d Cir. 1989); *United States v. Brown*, 776 F.2d 397, 400 (2d Cir. 1985).

The Second Circuit has found expert testimony helpful to jurors and admissible on a broad range of criminal conduct. Specifically, the Court has approved expert testimony concerning the structure and operating methods of criminal enterprises in the context of narcotics trafficking. In this area, the Second Circuit has approved the use of expert witnesses to interpret drug records, *United States v. Carmona*, 858 F.2d 66, 69 (2d Cir. 1988); to explain drug codes and jargon in intercepted conversations, *United States v. Simmons*, 923 F.2d 934, 946 (2d Cir. 1991); *Tutino*, 883 F.2d at 1133-34; *United States v. Garcia*, 848 F.2d 1324, 1335 (2d Cir. 1988), and *United States v. Kusek*, 844 F.2d 942, 949 (2d Cir. 1988); to establish that drug dealers frequently use telephone beepers, *United States v. Ginsberg*, 758 F.2d 823, 830 (2d Cir. 1985); to offer an opinion on conduct observed while on surveillance, *United States v. Carson*, 702 F.2d 351, 369-70 (2d Cir. 1983); to describe the roles of participants in a drug sale, *United States v. Brown*, 776 F.2d at 400; to describe the quantity, quality, and sale price of controlled substances in wholesale and street-level sales, *United States v. Pugliese*, 712 F.2d 1574, 1582 (2d Cir. 1983) and *United States v. Clark*, 498 F.2d 535, 536-37 (2d Cir. 1974); and to explain a videotape, to offer an opinion as to the nature of events observed, and to explain the drug distribution chain from obtaining raw materials for manufacture through retail sales, *United States v. Young*, 745 F.2d 733, 760-61 (2d Cir. 1984).

The Second Circuit has also ruled that agents may offer their interpretations of any physical

12

evidence that is properly before the jury.  See, e.g., United States v. *Boissoneault*, 926 F.2d 230, 233 (2d Cir. 1991); *United States v. Roldan-Zapata*, 916 F.2d at 795, 805 (2d Cir. 1990); *United States v. Campino*, 890 F.2d 588, 593 (2d Cir. 1989); *United States v. Diaz*, 878 F.2d 608, 617-618 (2d Cir. 1989).   The Second Circuit likewise has permitted experts to offer opinion testimony on the significance of certain conduct. See, e.g., *United States v. Brown*, 776 F.2d at 400-401 (testimony that defendant's observed role in drug transaction was that of a "steerer"); *Young*, 745 F.2d at 760-61 (testimony that location frequented by defendants was a narcotics "shooting gallery" and that witnessed incident was a narcotics transaction); *Carson*, 702 F.2d at 369 (testimony that furtive activity appeared to be sales of narcotics).  The jury is properly instructed that the expert opinions are not binding upon them. *United States v. Bermudez*, 526 F.2d 89, 98 (2d Cir. 1975).

D. **Audio Recordings and Transcripts**

The government will offer into evidence audio recordings of selected conversations between the individual defendants and others that were intercepted as a result of the wiretap investigation.

Recordings of a defendant's conversations are direct evidence of the contents of the conversations, and are admissible against the defendant under Federal Rule of Evidence 801(d)(2).

Audio recordings are independently admissible even where one or more parties to the conversation also testifies, *Nixon v. United States*, 487 F.2d 700 (D.C. Cir. 1973); *United States v. Bonanno*, 487 F.2d 654, 659-60 (2d Cir. 1973), based upon a showing of authenticity, accuracy, and relevance.  *United States v. Fuentes*, 563 F.2d 527, 532 (2d Cir. 1977); *United States v. Knohl*, 379 F.2d 427, 440 (2d Cir. 1967).  The decisions of the Second Circuit "reveal a clear preference for the admission of recordings notwithstanding some ambiguity or inaudibility, as long as the recordings are probative."  *United States v. Arango-Correa*, 851 F.2d 54, 58 (2d Cir. 1988).

A recording that is partially inaudible is, therefore, generally admissible unless the unintelligible portions are so substantial as to render the entire recording untrustworthy.  *United States v. Bryant*, 480 F.2d 785, 790 (2d Cir. 1973).  Partial inaudibility goes to weight and not admissibility.  *United States v. Weiser*, 428 F.2d 932, 936-937 (2d Cir. 1969).  If a tape is deemed

13

partially inaudible, the court should provide a cautionary instruction which warns the jury to disregard the inaudible portion.  *United States v. Skillman*, 442 F.2d 542, 552 n.8 (8th Cir. 1971).

It is not necessary to have either the operator of the tape recorder or a witness to the conversation testify, where other evidence supports a finding of accuracy.  *United States v. Fuentes,* 563 F.2d at 532.  The existence of the recordings themselves shows that the machine was capable of picking up sounds, *United States v. Moss*, 591 F.2d 428, 433 (8th Cir. 1979), and that the operator was competent.  *United States v. Bright*, 630 F.2d at 819 (5th Cir. 1980).  A consensual recording is, therefore, admissible without calling the informant who participated in it.  As the Second Circuit noted in *United States v. Barone*:

> . . . the government is not required to call as a witness a participant in a recorded conversation in order to authenticate the recording; it may lay the foundation for the recording through the testimony of the technician who actually made it.  See *United States v. Fuentes*, 563 F.2d 527, 532 (2d Cir.), <u>cert. denied</u>, 434 U.S. 959, 98 S. Ct. 491, 54 L. Ed. 2d 320 (1977).  A proper foundation for the Barone/Sacco recording was therefore laid through the testimony of the agent who operated the recording device.

913 F.2d 46, 49 (2d Cir. 1990).

Finally, with respect to the chain of custody of tape recordings, the Second Circuit ruled in *United States v. Steinberg*, 551 F.2d 510 (2d Cir. 1977), that there is no chain of custody requirement for audio recordings:

> Appellant Steinberg urges that the government should have been required to prove the chain of possession of the tape recordings from the time they were made to the time of trial.  No statute or court rule imposes such a burden on the government, and the testimony of [the agent] as to the authenticity and accuracy of the tapes laid a sufficient foundation for their admission.

*Id.* at 515.  *See also*, *United States v. Amrep Corp.*, 560 F.2d 539 (2d Cir. 1977).

Further, the use of transcripts of recordings has been specifically approved by the Second Circuit.  See *United States v. Carson*, 464 F.2d 424 (2d Cir. 1972); *United States v. Chiarizio*, 525 F.2d 289 (2d Cir. 1975).  The need to identify the speakers is a reason why the jury should be

permitted to read a transcript of an audio recording.  *United States v. Slake*, 627 F.2d 293 (D.C. Cir. 1980).

It is permissible for the jury to have the transcripts of conversations during deliberations. *United States v. Koska*, 443 F.2d 1167 (2d Cir. 1971); *United States v. Carson, supra*.

In *United States v. Chiarizio, supra*, the court stated that "[i]n cases where the defense and prosecution disagree as to the contents of the tape, the proper procedure is for the jury to receive transcripts of both sides' versions."  525 F.2d at 293.  The court should also listen to the tapes, comparing them to the transcripts, in such cases.  *Id.*

If the jury so requests, it is within the discretion of the trial judge to permit the jury to rehear the tapes and to utilize the transcripts while the tapes are being replayed during deliberation.  *United States v. Alfonso*, 552 F.2d 605 (5th Cir. 1977); *United States v. Turner, supra*; *United States v. Cioffi*, 493 F.2d 1111 (2d Cir. 1974).

### E.    **Chain of Custody**

An uninterrupted chain of custody is not a prerequisite to admissibility of an exhibit.  *United States v. Olson*, 846 F.2d 1103, 1116 (7th Cir. 1988).  "Gaps in the chain go to the weight of the evidence, not its admissibility".  *Id.*  See also, *United States v. Hon*, 904 F.2d 803, 809-810 (2d Cir. 1990); *United States v. Roberson*, 897 F.2d 1092, 1096, reh'g denied, 907 F.2d 1145 (11th Cir. 1990) (en banc); *United States v. Castro*, 889 F.2d 562, 568-569 (5th Cir. 1989); and *United States v. Lott*, 854 F.2d 244, 250 (7th Cir. 1988).  "If the trial judge is satisfied that in reasonable probability the evidence has not been altered in any material respect, he may permit its introduction".  *United States v. Olson*, 846 F.2d at 1116, (quoting *United States v. Aviles*, 623 F.2d 1192, 1198 (7th Cir. 1980)).

Federal Rule of Evidence 901(a) provides that:

> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

Proof of the connection of an exhibit to the defendant may be made by circumstantial

evidence. *United States v. Mendel*, 746 F.2d 155, 167 (2d Cir. 1984); *United States v. Howard-Arias*, 679 F.2d 363, 366 (4th Cir. 1982); *United States v. Natale*, 526 F.2d 1160, 1173 (2d Cir. 1975). See *United States v. Kubiak*, 704 F.2d 1545, 1552 (11th Cir. 1983). "[T]he prosecution need only prove a rational basis from which to conclude that the exhibit did in fact belong to the [defendant]." *United States v. Mendel*, 746 F.2d at 167; *United States v. Natale*, 526 F.2d at 1173. "The ultimate question is whether the authentication testimony is sufficiently complete so as to convince the court of the improbability that the original item had been exchanged with another or otherwise tampered with." *United States v. Mendel*, 746 F.2d at 167; *United States v. Howard-Arias*, 679 F.2d at 366; *United States v. Grant*, 967 F.2d 81, 83 (2d Cir. 1992).

### F.   **Evidence Defendants' Prior Criminal Acts: Rule 404(b)**

Fed. R. Evid. 404(b) provides, in pertinent part:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The Second Circuit has adopted the "inclusionary" approach to Rule 404(b).  Thus, prior act evidence "is admissible for any purpose other than to show a defendant's criminal propensity," , and such evidence should be excluded only where "its probative value is substantially outweighed by the danger of unfair prejudice." *United States v. Pitre*, 960 F.2d 1112, 1118, 1119 (2d Cir. 1992); see *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996)("this court follows the 'inclusionary' approach to 'other crimes, wrongs, or acts' evidence, under which such evidence is admissible unless it is introduced for the sole purpose of showing the defendant's bad character, or unless it is overly prejudicial under Fed. R. Evid. 403 or not relevant under Fed. R. Evid. 402."); see also *United States v. Pipola*, 83 F.3d 556, 565 (2d Cir. 1996).

A trial court has broad discretion in deciding whether to admit evidence of "other crimes" and its ruling will not be overturned absent abuse of that discretion. *United States v. Rosa*, 11 F.3d

16

315, 333-334 (2d Cir. 1993)

In determining the admissibility of prior act evidence, the district court must first decide if the evidence is offered for a proper purpose: "one other than to prove the defendant's bad character or criminal propensity". *Pitre*, 960 F.2d at 1119. The court must then decide whether the evidence is relevant and, if so, whether its probative value is substantially outweighed by the danger of unfair prejudice. *Id.* In that regard, evidence of a defendant's involvement in prior narcotics transactions is probative of his intent or knowledge in his current narcotics prosecution. *Id.* Further, evidence of prior bad acts is also admissible "to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between co-conspirators." *Rosa*, 11 F.3d at 334 (citations omitted)

As to each of the counts of the instant Indictment, the government is required to prove intent and knowledge beyond a reasonable doubt. To help meet that burden of proof, it is the government's intention to introduce, pursuant to Rule 404(b), evidence of defendant JONATHAN BAKER'S 2002 New York State felony drug conviction for Criminal Possession of a Controlled Substance in the Third Degree, in violation of Penal Law Section 220.16(1)(*with intent to sell*). In that case, the Rome Police Department obtained a search warrant for the person of JONATHAN BAKER, and his residence, following the purchase of crack cocaine from BAKER by a confidential informant. At the time BAKER was being sought for execution of the search warrant he was observed operating a stolen vehicle. BAKER was taken to the Rome Police Department where he was stip searched. Officer Jeffrey Race conducted the search, and upon instructing BAKER to bend at the waist, Officer Race observed a small plastic baggie, containing crack cocaine, sticking out of BAKER'S rectum. A search warrant for BAKER'S body cavity was obtained. Between the time of the initial strip search and the ultimate recovery of numerous baggies of crack from within his body (removed by a physican at at Syracuse hospital), BAKER made admissions to officers, including that he had been selling crack cocaine for a number of years, and that he often swallows the crack so as to avoid

17

detection by police.

The government submits that evidence of JONATHAN BAKER'S prior conviction -- possession of a controlled substance (crack) with the intent to sell it -- and the underlying facts, including the defendant's admissions of being a drug dealer who sells crack (the substance at issue in the current case), are admissible at trial of the instant indictment to prove the defendant's intent and knowledge.  See *United States v. Bilderbeck*, 163 F.3d 971, 977 (6th Cir. 1999)("where the crime charged is one requiring specific intent, the prosecutor may use 404(b) evidence to prove that the defendant acted with the specific intent notwithstanding that the defense was lack of possession, not lack of intent to distribute."); *United States v. Buchanan*, 70 F.3d 818, 831 (5th Cir. 1996)("Evidence that [the defendant] was previously convicted of a cocaine delivery offense tends to refute his story that he was merely "in the wrong place at the wrong time" and makes it more probable that he had the requisite "state of mind" or "intent" to participate in the present cocaine-related offenses"); *United States v. Jones*, 248 F.3d 671 (7th Cir. 2001) (where sole defense to possession with intent to distribute narcotics was the denial of possession of crack recovered in a 1998 search warrant, evidence previously obtained in a 1993 search warrant was properly admitted under Rule 404(b) to prove the defendant's intent and knowledge); see also *United States v. Perkins*, 94 F.3d 429, 434 (8th Cir. 1996) (in a possession with intent to distribute narcotics case where the defendant was not in direct possession of crack, evidence that the defendant had possessed crack cocaine six months prior to his arrest was admissible "to show  the defendant knew he was in possession of a controlled substance."); *United States v. Hardwell*, 80 F.3d 1471, 1488 (10th Cir. 1996)("Intent was an element the government was required to prove beyond a reasonable doubt, and [since] the theory of the defense was that the defendants' presence at the motel was innocent ... [e]vidence of prior drug distribution was relevant to show their presence at the motel was not innocent, and that they intended to distribute cocaine").

The government submits that evidence of defendant BAKER'S 2002 possession of crack cocaine with the intent to distribute it, and his resulting conviction for that very offense, should be

18

admitted as a part of the government's case-in-chief as evidence of the defendant's intent and knowledge. The intended use of this evidence is for a proper purpose, the evidence is relevant to the crimes charged in the indictment, and the probative value of the evidence is substantially outweighed by any potential prejudice to the defendant.

In addition to allowing prior bad act evidence proving intent and knowledge, Rule 404(b) provides that the admission of such evidence in order to "complete the story of the crimes charged." *Pitre*, 960 F.2d at 1119. Further, evidence of conspirators' past partnerships in dealing drugs (and stealing cars) is admissible to complete the overall picture for the jury and to "explain how the illegal relationship ... had developed. . .." *Rosa*, 11 F.3d at 334.

Again, as to defendant BAKER, the government intends to introduce testimony of cooperating witness Juan Breton who has had a long-standing relationship with BAKER -- a relationship almost exclusively related to the distribution of crack cocaine in and around the Rome, New York area. Breton will provide direct evidence in the instant offense by identifying BAKER'S voice on the wiretap recordings. He will also describe his years-long relationship with BAKER in the distribution of crack cocaine. This testimony is admissible both under the intent and knowledge prong of Rule 404(b) and to explain Breton's background and relationship with BAKER that provides the basis for his identification of BAKER'S voice in the instant case.

As to defendant GEORGE FULLER, the government intends to introduce testimony of a witness, Jeffrey Winters, who has known FULLER for a number of years. Winters also has direct and relevant evidence in regard to the instant trial -- the phone over which FULLER was intercepted in calling other members of the conspiracy was subscribed to by this Winters, and was given directly to FULLER at FULLER'S request. In addition, the Winters was familiar with co-conspirator Junior Mercurius aka "Dizzy", aka "John", lived at 1108 Taylor Avenue for a period of time, and on occasion observed FULLER at 1108 Taylor Avenue -- the drug distribution location and stash house used by members of the conspiracy. Winters will testify that he has known FULLER for a number of years, off and on, and all of his dealings with FULLER have been related to FULLER'S

19

distribution of crack cocaine.  In fact, Winters himself distributed crack for FULLER on a number of occasions.  As with Breton's testimony against BAKER, Winter's testimony in relation to FULLER is admissible both under the intent and knowledge prong of Rule 404(b) and to explain the Winters' background and relationship with FULLER.

Admission of this evidence is proper when the trial court instructs the jury that the defendants are not on trial for the past crimes and that the testimony was being admitted only to establish the association between co-conspirators. *Rosa, supra.*  Similarly, in *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) the trial court's decision to admit evidence of a pre-existing drug-trafficking relationship between the defendant and a co-conspirator, to aid the jury's understanding of how the transaction for which the defendant was charged came about and his role in it, was affirmed.  In *Pitre*, 960 F.2d at 1119, the Second Circuit once again affirmed a trial court's decision to admit such evidence given that it "could help explain to the jury the relationship between [the co-conspirators]."  See also *United States v. Araujo*, 79 F.3d 7, 8 (2d Cir. 1996), (evidence that defendant told cooperating co-conspirator that she successfully evaded police while she was in a criminal scheme to deliver $600,000 was admissible to show relationship of trust which led co-conspirator to ask defendant to pick up drugs).

G.   **Rule 609 Impeachment Evidence**

Rule 609(a)(1) provides, in pertinent part:

> **General rule.** For the purpose of attacking the credibility of a witness ...evidence that an accused has been convicted of ... a crime [punishable by death or imprisonment in excess of one year under the law under which the [the defendant] was convicted] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused;

*United States v. Mahone*, 537 F.2d 922, 929 (7th Cir. 1976), sets forth factors to be considered in determining whether or not a prior conviction should be used for impeachment purposes under Federal Rule of Evidence 609(a)(1):

20

1.      The impeachment value of the prior crime.

2.      The time of the conviction and the witness' subsequent history.

3.      The similarity between the past crime and the charged crime.

4.      The importance of the defendant's testimony.

5.      The centrality of the credibility issue.

Felony convictions which do not involve inherent dishonesty may be used under Rule 609 where the defendant's testimony and credibility are central to the outcome.  See, e.g., *United States v. Nururdin*, 8 F.3d 1187, 1192 (7th Cir. 1993).  Thus, impeachment of a defendant via proof of his prior felony drug conviction would be proper, see, e.g., *United States v. Breckenridge*, 782 F.2d 1317, 1321 (5th Cir. 1986), even where the crime being tried also is a drug crime.  See, e.g., *United States v. Guerue*, 875 F.2d 189, 190 (8th Cir. 1989); *United States v. Parrish*, 736 F.2d 152, 155 (5th Cir. 1984); *United States v. Ortiz*, 553 F.2d 782, 784-85 (2d Cir. 1977).

In this matter, as discussed above, defendant BAKER has a prior felony drug conviction for possession of crack with intent to distribute it.  Defendant MINOTT also has prior felony drug - and gun - convictions.  On or about July 19, 1999, in the Circuit Court for the City of Norfolk, Virginia, defendant MINOTT pled guilty to the felony crimes of Possession of Heroin with Intent to Distribute, Possession of Cocaine with Intent to Distribute, in violation of Virginia Code Section 18.2-248, and Possession or Use of a Firearm while Possessing Cocaine with Intent to Distribute, in violation of Virginia Code Sections 18.2-308.4(B) and 18.2-10.  MINOTT was sentenced to consecutive terms of 5 years imprisonment and $100 fines on each of the drug counts, and a consecutive term of 2 years imprisonment on the firearms count, each sentence suspended, but for 11 months on the Heroin count (which appears to have also been suspended).  MINOTT was also sentenced to a term of 6 years probation, the first 2 years supervised.  On March 8, 2001 a violation of probation was filed because, among other things, MINOTT absconded from probation, moved without permission, and left the Commonwealth of Virginia without permission.   He was resentenced to 12 years, which was suspended but for 12 months.  On January 31, 2002, after serving

21

the 12 months, MINOTT was placed on 6 years supervised probation, and that probation was transferred to New York City.  At the time of the instant offense, MINOTT was still on probation from his Virginia conviction, and that probation does not expire until January 31, 2008.

The Supreme Court has made clear that a determination of admissibility under Rule 609(a) cannot properly be made without the "factual context" provided by the defendant's actual testimony. *Luce v. United States*, 469 U.S. 38, 41 (1984).  The Court in *Luce* held that a defendant must testify to raise and preserve a claim of improper impeachment using a prior conviction.  The Court explained that the "subtle evidentiary" balancing required by Rule 609(a) cannot be performed without knowing "the precise nature of the defendant's testimony, which is unknowable when . . . the defendant does not testify."  469 U.S. at 41.  Indeed, even "requiring a defendant to make a proffer of testimony is no answer; his trial testimony could, for any number of reasons, differ from the proffer."  469 U.S. at 41.

Accordingly, determination of the admissibility of the several defendants' prior drug convictions for impeachment under Rule 609(a) cannot properly be made until after any defendant who chooses to testify has concluded his direct testimony.

## VI.    CONCLUSION

Through this trial memorandum the government has attempted to summarize those principles of law which we believe to be applicable in resolving issues that the Court may face during trial.  We respectfully request an opportunity to submit additional legal authority in connection with such other issues as may arise.

22